UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK          Case No.:
RBC CAPITAL MARKETS, LLC

      **Plaintiff,**

-against-

GARCIA HAMILTON & ASSOCIATES, L.P.

      **Defendant.**

## COMPLAINT

Plaintiff, RBC Capital Markets, LLC (hereinafter "RBCCM"), brings this complaint against Defendant, Garcia Hamilton & Associates, L.P. (hereinafter "GHA"), and alleges the following.

### NATURE OF CLAIM

1. This is an action grounded upon mutual mistake requiring reformation, breach of contract, breach of the duty of good faith and fair dealing, and unjust enrichment. RBCCM seeks a determination that GHA has a duty to cancel, reverse, and/or refund proceeds from a transaction for Dupont floating rate notes dated May 9, 2019, CUSIP (Committee on Uniform Identification Procedures) No. 263534CM9 (the "bond transaction").

2. As described in great detail below, GHA, and its counsel, have fraudulently induced RBCCM, and its counsel, to delay the filing of this action, through their false and illusory expressed desire to engage in settlement discussions, when in actuality their true motive and *modus operandi* was to buy time to enable them to draft and file a Complaint in the United States District Court for the Southern District of Texas (the "Texas Complaint"),

1

which seeks preemptive declaratory relief, on issues identical to those RBCCM had expressed its intention to pursue before this Court, in what is a transparent attempt by GHA to deprive RBCCM, of RBCCM's undeniable right to pursue its meritorious claims in this Court.  Thus, the first-to-file rule is inapplicable, as per well-grounded precedent in both the Fifth and Second Circuits, and the matter must proceed before this Honorable Court.

## THE PARTIES

3. RBCCM is a Minnesota limited liability company and has its principal place of business in the State of New York. It is a subsidiary of RBC USA Holdco, a bank holding company and fully owned subsidiary of Canadian bank Royal Bank of Canada. RBCCM is authorized to do business in the State of New York and elsewhere.

4. GHA is incorporated under the laws of the State of Delaware and has its principal place of business in the State of Texas. It is an asset management firm authorized to do business in the State of New York and elsewhere.

## JURISDICTION AND VENUE

5. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1331 (a)(1) because the amount in controversy exceed the sum value of $75,000.00, exclusive of interests and costs, and the suit is between citizens of different states.

6. Pursuant to NYCPLR §301 and NYCPLR §302(a)(1), this Court has personal jurisdiction over GHA.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.

## GENERAL ALLEGATIONS

### I. Dupont Floating Rate Notes Transaction Dated May 9, 2019

8. On May 7, 2019, Dupont announced that its Board of Directors had approved the separation of DowDuPont's Agriculture Division. Such announcement triggered the ability for certain bonds to be called; meaning, that Dupont would call the bonds and pay the holders of the bonds the call price (the face value of the bonds) (the "Dupont Announcement").

9. On May 9, 2019, at 8:40 AM, before RBCCM was aware of the Dupont Announcement, RBCCM agreed to purchase 471,580 Dupont bonds (the "Bonds"). Per industry practice, the yield (and therefore the price) for these bonds was agreed based on the maturity reported on Bloomberg on May 9, 2019. Based on the parties' communications, GHA appeared to share RBCCM's belief (based on data visible on Bloomberg) that the bonds were not due to mature until 2020. On May 9, 2019, the transaction price was calculated to be $100.350 (the "Initial Price").

10. Accordingly, RBCCM purchased the Bonds from GHA at the Initial Price, and wired $47,323,053.00 (excluding accrued interest) to GHA to consummate the purchase.

11. However, the Initial Price did not reflect the Dupont Announcement, which would have had a material, calculable impact on the price of the Bonds, by, in essence, reducing the time to maturity from almost one year to less than three weeks. Notably, this modification had not been implemented on Bloomberg at the time of the transaction on May 9, 2019.

12. As such, the transaction price, properly calculated as $100.004, was instead calculated, by mutual mistake of the parties, as $100.350 (based on a maturity date of May 1, 2020,

as opposed to the revised maturity date of May 24, 2019), leading to an overpayment by RBCCM to GHA in the amount of $162,937.49.

13. This reporting error was subsequently noted and corrected by Bloomberg on or about May 10, 2019.

14. On or about May 16, 2019, immediately upon becoming aware of the Bonds' yield correction, RBCCM contacted GHA and demanded that GHA refund the overpayment in the amount of $161,641.81 – less than the total of $162,937.49 - on account of the undeniable error in Bloomberg's reporting.

15. RBCCM sent several communications demanding a refund of the overpayment on account of, *inter alia*, mutual mistake requiring reformation of the transaction/contract.

16. Indeed, on June 27, 2019, Paul Serritella, RBCCM's Director and Senior Counsel sent GHA's Chief Compliance Officer, Beth McWilliams, a letter demanding a refund of the overpayment, providing a detailed description of the error in question, and referring GHA to the relevant websites and applicable case law. A true and correct copy of the June 27, 2019 letter is annexed hereto as Exhibit "1".

17. On August 13, 2019, Gilbert Garcia, of GHA, sent Stephen Manning, of RBCCM, an email requesting, *inter alia*, evidence of the Bloomberg's price correction for the Bonds. A true and correct copy of the August 13, 2019 email is annexed hereto as Exhibit "2".

18. On August 15, 2019, Stephen Manning, of RBCCM, responded to Gilbert Garcia, of GHA, *via* email, which email included attachments that provided irrefutable evidence of the Bonds' price correction, as reported by Bloomberg, and stated that RBCCM was open to discussing the matter at any time. A true and correct copy of the August 15, 2019

email from Stephen Manning to Gilbert Garcia, with attachments, is annexed hereto as Exhibit "3".

19. On August 27, 2019, Stephen Manning, of RBCCM, sent a follow up email to Gilbert Garcia, of GHA, attempting to confirm Gilbert Garcia's receipt of Stephen Manning's August 15, 2019 email with attachments, and, once again, indicating that RBCCM was open to discussing this matter. A true and correct copy of the email from Stephen Manning to Gilbert Garcia on August 27, 2019 is annexed hereto as Exhibit "4".

20. On September 20, 2019, Jeffrey Detwiler, of GHA, sent an email to Stephen Manning, of RBCCM, attempting to justify GHA's delayed response by stating that Gilbert Garcia was traveling, and that Gilbert Garcia would send a letter the following week. In addition, Jeffrey Detwiler, reiterated Gilbert Garcia's request for evidence of Bloomberg's price correction of the subject Bonds, despite the fact that such evidence was already provided on June 27 and August 15, 2019. A true and correct copy of the email from Jeffrey Detwiler to Stephen Manning is annexed hereto as Exhibit "5". Gilbert Garcia did not respond any further, by letter, or otherwise.

**II.     GHA, and its Counsel, Have Engaged in Improper Forum Shopping**

21. On October 7, 2019, counsel for RBCCM sent GHA another demand letter, due to GHA's lack of response, and due to GHA's refusal to acknowledge the undeniable, and public, correction by Bloomberg of the Bonds' price. This time, RBCCM indicated an unequivocal intent to commence legal action in the United States District Court for the Southern District of New York, by October 16, 2019, in the event that GHA did not refund the overpaid portion of the Bonds' price by stating:

> [I]f Garcia Hamilton & Associates, L.P. ("Garcia Hamilton") does not transfer $161,641.58 to [RBCCM] by Wednesday, October 16,

>    2019, [RBCCM] will pursue all remedies afforded to it by law, including, but not limited to, commencing legal action in the United States District Court, for the Southern District of New York, on the grounds of mutual mistake requiring reformation of a contract, breach of contract, breach of the duty of good faith and fair dealing, unjust enrichment and any other appropriate claims.

   A true and correct copy of the October 7, 2019 demand letter is annexed hereto as Exhibit "6".

22. On October 9, 2019, in response to the undersigned's October 7, 2019, demand letter, particularly the threat contained therein to commence litigation in this very Court, Counsel for GHA, Jacob Monty from Monty and Ramirez, LLP, requested an extension of the deadline until October 31, 2019 by leaving a voicemail for RBCCM's counsel.

23. On Friday, October 11, 2019, Jacob Monty, counsel for GHA, contacted Paul Serritella, internal senior counsel for RBCCM, by telephone, and stated that he wanted an extension of time on RBCCM's October 7, 2019 demand letter and wanted to discuss the prospect of a deal with RBCCM.  Paul Serritella responded by stating that GHA had been stalling for a while but RBCCM would consider a reasonable extension to permit resolution of the matter.  Jacob Monty responded by saying that he, and his client, were motivated to reach an amicable resolution with RBCCM regarding this dispute.

24. Counsel for RBCCM contacted counsel for GHA on October 15, 2019 and left a message with the receptionist for Jacob Monty, or his associate, Laura Hernandez, to return the call.

25. On October 15, 2019, at 5:56 PM, Jacob Monty sent an email to counsel for RBCCM stating the following:

>    Thank you for reaching out. Both Laura [and I] are in a mediation today. **We were hoping to get an exten[s]ion till end of the month to get our client on board with a**

6

> **resolution**.  We only got retained last week and we are meeting with our client this week.  **Can we have till Oct. 31 before you commence any litigation**? [Emphasis Added].

A true and correct copy of the October 15, 2019 email from GHA's counsel to RBCCM's counsel is annexed hereto as Exhibit "7".

26. In response, on October 15, 2019, at 10:18 PM, counsel for RBCCM sent an email to counsel for GHA stating the following:

> My client is concerned that Garcia Hamilton has been essentially unresponsive about this matter, about which they have known since Paul's letter dated June 27, 2019.
>
> We do not understand what it is that will take your client until the end of the month. I am authorized to offer you an extension until Monday, October 21, 2019. If you were to offer a reasonable approach to resolving this matter by then, my client will consider a further extension.

A true and correct copy of the October 15, 2019 email from RBCCM's counsel to GHA's counsel is annexed hereto as Exhibit "8".

27. On October 21, 2019, at 10:41 AM, counsel for GHA reached out to counsel for RBCCM to try to schedule a call to discuss this matter.  Due to GHA's last-minute attempt to schedule such call, counsel for RBCCM was unavailable on October 21, 2019, and suggested that they speak the next day at any time after 10:00 AM, effectively consenting to an additional extension of one day.  Ultimately, counsel for both parties agreed to speak at 2:30 PM on October 22, 2019.

28. On the October 22, 2019 call, GHA's counsel started by reciting GHA's purported defenses. Counsel for RBCCM responded by stating "Are you going to make a settlement offer today?"  Counsel for GHA firmly stated that she would not make an offer.  In response, counsel for RBCCM asked Counsel for GHA to "send an email regarding the

basis for its position, so that RBCCM and its counsel could assess GHA's position and respond accordingly". Counsel for GHA agreed to do so.

29. On October 22, 2019, at 5:06PM (after business hours and almost 3 hours after the parties' respective counsel spoke on the phone), GHA's counsel did indeed send an email to RBCCM's counsel setting forth its client's position on the subject dispute, and, instead of affording RBCCM an opportunity to assess GHA's position and respond in good faith, as agreed upon during the call earlier that day, GHA's counsel stated the following in relevant part:

> Because your client has threatened to pursue litigation on numerous occasions, **and we have not come to any resolution on this matter**, my client feels like it has no choice but to file a declaratory judgment action so that a court of competent jurisdiction can settle the matter. [Emphasis Added].

A true and correct copy of the October 22, 2019 email from GHA's counsel to RBCCM's counsel is annexed hereto as Exhibit "9".

30. Notably, although RBCCM was ready, willing, and able to engage in meaningful settlement discussions in good faith, and even refrained from commencing this action, at GHA's request and in reliance upon GHA's misrepresentations that it would be making a settlement offer imminently, GHA abruptly shifted its position and refused to engage in settlement discussions of any kind.

31. After receiving the email from GHA's counsel on October 22, 2019, counsel for RBCCM immediately contacted counsel for GHA and left a voicemail inquiring as to whether or not GHA had filed a Complaint, and, if so, in what jurisdiction, as the October 22, 2019 email was not clear on this point.

32. On October 25, 2019 (3 days later), GHA's counsel informed RBCCM's counsel that it had filed a Complaint, seeking a declaratory judgment in Texas (the "Texas Complaint"). A true and correct copy of the October 25, 2019 email is annexed hereto as Exhibit "10".

33. A true and correct copy of the Texas Complaint is annexed hereto as Exhibit "11".

34. The Texas Complaint was filed on the morning of October 23, 2019 – the morning immediately following the conversation between counsel for RBCCM and counsel for GHA, and only hours after GHA's counsel sent its email setting forth its position and indicating that GHA had already filed, or was in the process of filing, a Complaint seeking declaratory relief, in an unspecified jurisdiction.

35. Given the circumstances surrounding GHA's request for an extension of time, and the timing of the October 22, 2019 email setting forth GHA's position, coupled with the fact that GHA filed the Texas Complaint immediately after the October 22, 2019 phone call and email, it is abundantly clear that the Texas Complaint was already drafted before counsel for GHA even spoke to counsel for RBCCM on October 22, 2019.

36. There is no doubt that GHA's deception was designed to dupe RBCCM's counsel with the false promise of settlement in a grossly improper (and impermissible) manner, in order to beat RBCCM in a race to the courthouse. The conduct of GHA, and its counsel, constitutes forum shopping.

37. The Texas Complaint requests the Texas Court to enter an order declaring, essentially, that the causes of action set forth in this Complaint, before this Court, lack merit, before this Complaint was even filed.  See Exhibit 11, para. 27.  GHA had admitted that the reason why they chose to commence the Texas Action is because RBCCM threatened to

commence litigation before this Court, on the grounds set forth herein. See Exhibit "11", para. 8.

38. Notably, despite RBCCM's good faith efforts to resolve this matter amicably, GHA made no such efforts. Indeed, GHA requested an extension of time from RBCCM's counsel under the false pretense that they would be making a good faith settlement offer, when, in actuality, they were merely buying time to draft and file the Texas Complaint, in what can only be described as classic bad faith.

39. At no point did GHA make a settlement offer, or solicit an offer from RBCCM, that would have indicated an intent to resolve this issue.

40. Indeed, GHA, and its counsel, did not act in good faith at any relevant time, and they certainly did not have any intention of even attempting to resolve this matter – all that they were concerned with was obtaining more time from RBCCM, using whatever means necessary (including, but not limited to, sharp practices), so that they could litigate this matter in the forum of their choosing.

41. Based on the foregoing, RBCCM has filed this action in this Court, as an exception to the first-to-file rule (where a party deceives another into delaying the commencement of an action by falsely promising to engage in meaningful settlement discussions, only to file a preemptive complaint exclusively seeking declaratory relief in another jurisdiction).

42. The aforementioned exception to the first-file-rule is well-grounded precedent in both the Fifth and Second Circuits.

## FIRST CAUSE OF ACTION
**(Reformation)**

43. Plaintiff repeats and re-alleges the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

44. As alleged above, Plaintiff and Defendant entered into an enforceable agreement for the purchase and sale of the Bonds on May 9, 2019, which set the price for the purchase and sale of the Bonds based on the maturity reported by Bloomberg.

45. Due to the Bloomberg reporting error, the Bonds were not purchased for the correct price of $100.004 per bond; rather, they were mistakenly purchased for $100.35 per bond.

46. By virtue of this undeniable mutual mistake, resulting from a Bloomberg reporting error, there is no doubt that RBCCM overpaid GHA, and is owed $161,641.58.

47. RBCCM acquired all rights and benefits incidental to the ownership of the Bonds that it purchased, including all contractual rights and rights of reformation against GHA.

48. RBCCM has performed all required conditions, covenants, and promises under the agreement between RBCCM and GHA for the purchase of the Bonds.

49. GHA breached and repudiated its obligations under the Bonds by refusing to adjust the price of the Bonds to reflect the accurate maturity date of the bonds.

50. GHA's conduct is wrongful, improper, and unauthorized.

51. Accordingly, the agreement between the parties must be reformed to reflect the correct price of the Bonds - $100.004, based on the maturity date as corrected by Bloomberg, and the overpayment in the amount of $161,641.58 must be refunded by GHA to RBCCM forthwith, along with statutory interest and attorneys' fees.

## SECOND CAUSE OF ACTION
**(Breach of Contract)**

52. RBCCM repeats and re-alleges each of the allegations contained in the preceding paragraphs.

53. As alleged above, RBCCM and GHA entered into an enforceable agreement for the purchase and sale of the Bonds on May 9, 2019, in which RBCCM undertook to pay GHA a purchase price in the amount of the price set forth by Bloomberg for the Bonds.

54. As promised, RBCCM performed its obligation under the agreement by wiring Defendant a total of $47,323,053, in reliance upon Bloomberg's erroneous report that the Bonds were priced at 100.35 each.

55. Immediately upon discovery of Bloomberg's reporting error, and subsequent correction of the price of the Bonds to $100.004 each, RBCCM demanded that GHA refund its overpayment in the amount of $161,641.58.

56. GHA violated its obligation under the agreement to honor the pricing set forth by Bloomberg and has failed to refund the overpayment in the amount of $161,641.58 to RBCCM.

57. As such, GHA is in breach of its agreement with RBCCM.

58. RBCCM has suffered damage in the amount of the overpayment ($161,641.58).

59. RBCCM seeks payment of the amount she overpaid to GHA ($161,641.58) in addition to statutory interest, and attorneys' fees.

## THIRD CAUSE OF ACTION
**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

60. RBCCM repeats and re-alleges each of the allegations contained in the preceding paragraphs.

61. In New York, within every contract is an implied covenant of good faith and fair dealing. The parties' agreement for the purchase and sale of the Bonds contains such an implied covenant as New York law is applicable to this dispute.

62. GHA breached this covenant when it acted in bad faith and in a manner that deprived RBCCM of the amount of the overpayment in the amount of $161,641.58, by refusing to honor the accurate price of the Bonds, as reported by Bloomberg.

63. RBCCM reasonably relied upon GHA's promise to honor the Bloomberg pricing for the Bonds, and as a result, RBCCM has been damaged in the amount of $161,641.58.

### FOURTH CAUSE OF ACTION
**(Unjust Enrichment)**

64. RBCCM repeats and re-alleges each of the allegations contained in the preceding paragraphs.

65. Certain legal and equitable obligations exist that were intended in the contract but that have not been fulfilled by GHA, namely the agreement by the parties to honor the pricing set forth on Bloomberg for the purchase and sale of the Bonds.

66. As a result, and irrespective of whether the obligation to do so exists under the contract, GHA has unjustly enriched itself by accepting the overpayment in the amount of $161,641.58 tendered by RBCCM, and by refusing to refund said overpayment, despite RBCCM's repeated demands for GHA to do so.

67. RBCCM has been damaged by GHA's unjust enrichment in the amount of the overpayment ($161,641.58), along with statutory interest and attorneys' fees.

WHEREFORE, RBCCM prays that this Honorable Court:

A. Enter judgment in favor of RBCCM and against GHA, ordering GHA to:

    i.) reforming the contract for the purchase and sale of the Bonds to reflect the actual price of the Bonds, as corrected by Bloomberg on or about May 10, 2019 ($100.004 per Bond); and

      ii.)    immediately refund the overpayment by RBCCM in the amount of $161,641.58;

B. Order such and further relief as the Court may deem just and equitable, including but not limited to ordering GHA to pay the costs of this action and reasonable attorneys fees.

Dated: New York, New York
       November 4, 2019

**SABHARWAL & FINKEL, LLC**

By: /s/Adam Finkel
    Adam Finkel (AF-1368)
    *Attorneys for Plaintiff*
    250 Park Avenue, 7th Floor
    New York, New York 10177
    Tel:   (646) 409-2789