UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------X
RBC CAPITAL MARKETS, LLC,

              Plaintiff,             **MEMORANDUM AND ORDER**

        - against -        19 Civ. 10247 (NRB)

GARCIA HAMILTON & ASSOCIATES,
LP,

              Defendant.

-----------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


    Plaintiff RBC Capital Markets, LLC ("RBC") brought suit against defendant Garcia Hamilton & Associates ("Garcia Hamilton") for reformation, breach of contract, breach of good faith and fair dealing, and unjust enrichment arising out a securities transaction between the two parties. Garcia Hamilton now moves to dismiss the suit for lack of personal jurisdiction and improper venue. For the following reasons, Garcia Hamilton's motion is granted.

**BACKGROUND**

**1. The DuPont Bonds Sale**

    RBC is a Minnesota limited liability company with its principal place of business in New York. Compl. ¶ 3. Garcia Hamilton is a Delaware limited partnership with its principal place of business in Texas. Id. ¶ 4.

On May 7, 2019, Du Pont DE Nemours ("DuPont") announced that its Board of Directors had approved the separation of DowDuPont's Agriculture Division which triggered the ability for DuPont to call certain bonds (the "DuPont Bonds") and pay the holders of the bonds the call price, i.e., the face value of the bonds. Id. ¶ 8. This case results from a sale by Garcia Hamilton to RBC of DuPont Bonds after the separation announcement but before Bloomberg L.P. ("Bloomberg") had factored the announcement into its calculation of the price of the bonds. The history of the transaction at issue follows.

On May 8, 2019, Jeff Detwiler, a Partner & Portfolio Manager for Garcia Hamilton based in Houston, contacted William Matthew Wagoner, the Vice President of Credit Trading for RBC, via Bloomberg Instant, an online messaging service for securities traders. In that conversation, Detwiler offered to sell and Wagoner agreed to purchase 22,425,000 DuPont Bonds to RBC at a price of $100.337 per bond. ECF No. 25-1.

According to a declaration from Detwiler, Wagoner was not his usual contact at RBC. Rather, Philip Smith, who was RBC's salesman who typically engaged with Garcia Hamilton, instructed Detwiler to communicate with Wagoner while Smith was traveling. ECF No. 34, ¶¶ 3-5. While Smith worked from RBC's Dallas office (Id. at ¶ 7; ECF No. 26, ¶¶ 6-9), Wagoner worked from RBC's New York Office. ECF No. 30 ¶ 2.

The following day, May 9, 2019, Detwiler initiated another conversation via Bloomberg Instant with Wagoner:

Jeff Detwiler: Hi Matt

Jeff Detwiler: Did you sell all of your DD flt 5/1/20?

Matt Wagoner: yup

Matt Wagoner: Could use more if you have more to go

Jeff Detwiler: I can take a look

Jeff Detweiler: How many and at what level?

Matt Wagoner: let me [take] a quick look at one thing

Matt Wagoner: +19/ 50mm

Jeff Detweiler: We own 47,158m

Jeff Detwiler:  Can you do +18 for the whole piece?

Matt Wagoner: sure

Matt Wagoner: I buy

ECF No. 25-2.  As a result of this conversation, Garcia Hamilton sold its remaining 47,158,000 DuPont Bonds to RBC at a price of $100.350 per bond.  Compl. ¶ 12.  That same day, RBC sold these additional bonds to third parties based in New York and California. ECF No. 30 ¶ 5.

While Wagoner handled the transaction in Smith's absence, the transaction was still credited to Smith.  ECF No. 34 ¶ 7.  In order to settle the transaction – i.e., complete the purchase with payment to Garcia Hamilton and transfer of ownership to RBC – Smith's sales assistant, Lori Zajic (also based in Dallas) sent a

ticket of the agreed upon terms to Detwiler, who confirmed the accuracy of the terms.  Id. ¶¶ 8; ECF No. 33 ¶ 5.

RBC alleges that at the time of these sales to RBC, Bloomberg was still reporting that the bonds were not due to mature until 2020.  Compl. ¶ 9.  On May 10, 2019, Bloomberg finally reported that the DuPont Bonds had been "called" pursuant to the business separation announcement of May 7, 2019.  Id. ¶ 13.

On or about May 13, 2019, the May 8 and May 9 sales of the DuPont Bonds to RBC settled electronically through the Depository Trust & Clearing Company ("Depository Trust"), a New York corporation.  ECF No. 29 ¶¶ 2-4.

On May 16, 2019, RBC contacted Garcia Hamilton and demanded that Garcia Hamilton cancel the settled transaction for the sale of bonds on May 9 or otherwise refund an alleged overpayment of $161,641.81 on account of the error in Bloomberg's reporting. Compl. ¶ 14.  The parties engaged in several rounds of back-and-forth communications concerning the bond sale, and ultimately, Garcia Hamilton declined to reverse the sale or refund the alleged overpayment.  Id. ¶¶ 15-20.

**2. Procedural History**

On October 23, 2019, Garcia Hamilton filed a declaratory judgment lawsuit in the Southern District of Texas before Judge Andrew S. Hanen seeking a declaration that there was no mutual mistake and that RBC was not entitled to any judgment.  RBC moved

-4-

to dismiss for lack of personal jurisdiction.

On November 4, 2019, while its motion before the Texas district court was pending, RBC filed the instant action. ECF No. 1. Garcia Hamilton moved to dismiss the suit on personal jurisdiction and venue grounds on December 2, 2019. ECF No. 9. Given the extant Texas action, this Court issued a stay pending the outcome of RBC's motion to dismiss the Texas lawsuit. ECF No. 13.

On June 10, 2020, Judge Hanen dismissed Garcia Hamilton's action citing the Texas court's lack of personal jurisdiction over RBC. See Garcia Hamilton & Assocs., L.P., v. RBC Capital Markets, LLC, 466 F. Supp. 3d 692 (S.D. Tex. 2020). The Court subsequently lifted its stay and granted Garcia Hamilton leave to renew its motion to dismiss for lack of personal jurisdiction (ECF No. 20), which it did on July 2, 2020. ECF. No. 24.

## DISCUSSION

### 1. Legal Standard

Garcia Hamilton first challenges this Court's exercise of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

It is the plaintiff's burden to demonstrate that the court has personal jurisdiction over the defendant. Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001). "In order to survive a motion to dismiss for lack of personal jurisdiction, a

plaintiff must make a prima facie showing that jurisdiction exists." <u>Penguin Grp. (USA) Inc. v. Am. Buddha</u>, 609 F.3d 30, 34-35 (2d Cir. 2010) (quoting <u>Thomas v. Ashcroft</u>, 470 F.3d 491, 495 (2d Cir. 2006)).  Such a showing "entails making 'legally sufficient allegations of jurisdiction,' including 'an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant.'"  <u>Id.</u> (alterations omitted) (quoting <u>In re Magnetic Audiotape Antitrust Litig.</u>, 334 F.3d 204, 206 (2d Cir. 2003) (per curiam)).  "In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), a court may look to evidence outside the pleadings." <u>Sandoval v. Abaco Club on Winding Bay</u>, 507 F. Supp. 2d 312, 315 (S.D.N.Y. 2007).

"The lawful exercise of personal jurisdiction by a federal court requires satisfaction of three primary requirements": (1) the defendant must have been properly served, (2) the court must have a statutory basis for exercising personal jurisdiction, and (3) the exercise of personal jurisdictional must comport with constitutional due process principles.  <u>Licci ex rel. Licci v. Lebanese Canadian Bank, SAL</u>, 673 F.3d 50, 59-60 (2d Cir. 2012).

New York's long-arm statute permits courts to reach a foreign defendant "who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or

services in the state." N.Y. C.P.L.R. § 302(a)(1).[1]  "To establish
personal jurisdiction under this provision, the plaintiff must
demonstrate that the defendant engaged in a purposeful business
transaction in or directed to New York and that such contacts with
the state had a 'substantial relationship' to the claim asserted
in the underlying litigation."  Pearson Educ., Inc. v. Shi, 525 F.
Supp. 2d 551, 555 (S.D.N.Y. 2007).  "A defendant need not physically
enter New York State in order to transact business, 'so long as
the defendant's activities here were purposeful.'"  Licci, 673 F.3d
at 61 (quoting Fischbarg v. Doucet, 9 N.Y.3d 375, 380, 880 N.E.2d
22 (2007)).  While "[a] single contact is sufficient to show that
a defendant 'transacted business' within the meaning of C.P.L.R.
302(a)(1)," Packer v. TDI Sys., Inc., 959 F. Supp. 192, 199
(S.D.N.Y. 1997) (citing Kreutter v. McFadden Oil Corp., 71 N.Y.2d
460, 467 (1988)), "[i]n the end, 'whether a defendant has
purposefully availed itself of the New York forum is a fact-
intensive inquiry inasmuch as it requires the trial court, in the
first instance, to 'closely examine the defendant's contacts for
their quality.'"  Gordian Grp., LLC v. Syringa Expl., Inc., 168 F.
Supp. 3d 575, 584 (S.D.N.Y. 2016) (quoting Licci, 732 F.3d at 168

---

[1]    RBC cites N.Y. C.P.L.R. § 302(a)(1) as the only grounds for which this
Court might exercise personal jurisdiction over Garcia Hamilton.  The parties
do not dispute that RBC's cause of action arises from acts by Garcia Hamilton
within the state as required under N.Y. C.P.L.R. § 302(a); only whether such
acts constitute sufficient contacts for the Court to exercise personal
jurisdiction.

(2d Cir.2013)).

### a. Analysis

We first determine whether New York's long-arm statute provides a basis for jurisdiction, i.e., whether Garcia Hamilton transacted business in New York within the meaning of the statute. Both parties direct the Court's attention to the New York Court of Appeal's decision in Deutsche Bank Sec., Inc. v. Montana Bd. Of Invs., 7 N.Y.3d 65 (2006), which indeed bears some similarity to the case before us.  In that case, the New York-based plaintiff contacted an employee of the defendant in Montana through Bloomberg Instant asking if defendant would be interested in selling bonds to the plaintiff.  Defendant initially declined, but ten minutes later, reengaged in negotiations with plaintiff.  From that conversation, defendant agreed to sell $15 million in bonds at the price originally quoted by the plaintiff, though ultimately reneging on the sale, resulting in the litigation.  Id. at 69-70.

In upholding personal jurisdiction over the Montana-based defendant, the Court of Appeals "recognized CPLR 302(a)(1) long-arm jurisdiction over commercial actors and investors using electronic and telephonic means to project themselves into New York to conduct business transactions." Id. at 71.  It further noted that defendant was "a sophisticated institutional trader that entered New York to transact business here by knowingly initiating and pursuing a negotiation with [plaintiff] in New York

-8-

that culminated in the sale of $15 million in bonds." Id. at 71-72. Finally, the court noted that "over the preceding 13 months, [defendant] had engaged in approximately eight other bond transactions with [plaintiff]'s employee in New York, availing itself of the benefits of conducting business here, and thus had sufficient contacts with New York to authorize our courts to exercise jurisdiction over its person." Id. at 72.

Here, Garcia Hamilton initiated a conversation with RBC's New York-based employee through the very same messenger system used in Deutsche Bank that culminated in the sale of bonds at the center of plaintiff's claims. However, unlike Deutsche Bank where the parties engaged in eight transactions over the course of 13 months, Garcia Hamilton's only alleged contacts with RBC's New York office consists of two online communications over the course of 18 hours. ECF No. 30-1; ECF No. 30-2. This is insufficient to show that Garcia Hamilton "avail[ed] itself of the benefits of conducting business" in New York. Deutsche Bank, 7 N.Y.3d at 72. See Gordian Grp., LLC v. Syringa Expl., Inc., 168 F. Supp. 3d 575, 585 (S.D.N.Y. 2016) (internal quotations omitted) ("As this Court has previously noted, however, Deutsche Bank . . . do[es] not stand for the proposition that initiating a transaction with a plaintiff in New York amounts to transacting business. Those cases, rather, fit well into a line of decisions emphasizing the purposeful creation of a continuing relationship with a New York

corporation."); <u>see also</u> <u>id.</u> ("Defendant's relationship with
Plaintiff is scant by comparison.  The Agreement was the first
transaction between [Defendant] and Plaintiff, and the
relationship existed for a significantly shorter period of time
than the relationship at issue in <u>Deutsche Bank</u>."); <u>Berkshire
Capital Grp., LLC v. Palmet Ventures</u>, LLC, No. 06 Civ. 13009 (PAC),
2007 WL 2757116, at *5 (S.D.N.Y. Sept. 21, 2007), <u>aff'd</u>, 307 F.
App'x 479 (2d Cir. 2008) ("Here, [unlike in <u>Deutsche Bank</u>,]
Defendants entered into a single, discrete agreement with a New
York entity . . . .  Defendants did not have a continuous and
ongoing relationship with Plaintiffs in New York, and never set
foot in New York.").

        "'Telephone calls and correspondence sent into New York, by
a non-domiciliary defendant who is outside New York, generally are
insufficient to establish personal jurisdiction.'"  <u>Three Five
Compounds, Inc. v. Scram Techs., Inc.</u>, No. 11 CIV. 1616, 2011 WL
5838697, at *7 (S.D.N.Y. Nov. 21, 2011) (quoting <u>Int'l Customs
Assocs. v. Ford Motor Co.</u>, 893 F. Supp. 1251, 1261 (S.D.N.Y.
1995)).  Instead, courts in this District have held that
"'communications into New York will only be sufficient to establish
personal jurisdiction if they were related to some transaction
that had its center of gravity inside New York, into which a
defendant projected himself.'"  <u>Id.</u> at *4 (quoting <u>Maranga v. Vira</u>,
386 F. Supp. 2d 299, 306 (S.D.N.Y. 2005).  Here, the center of

gravity for the transaction, if anywhere, is in Texas. Detwiler was directed to communicate with Wagoner by Smith from RBC's Dallas office, and after the transaction was agreed to between Detwiler and Wagoner, it was credited to Smith and finalized for settlement between Garcia Hamilton's Houston office and RBC's Dallas office.[2] The DuPont Bonds themselves were in Garcia Hamilton's possession to begin with, and unlike the bonds at issue in Deutsche Bank, had no particular connection to New York. See Kimco Exch. Place Corp. v. Thomas Benz, Inc., 824 N.Y.S. 2d 353, 354 (2006) ("[T]he defendants, in contracting with the plaintiff, were not seeking to take advantage of a field particular to New York, such as the New York bond market particularly sought in Deutsche Bank.").

Here, Garcia Hamilton's contacts with New York were, in reality, a coincidence. See Alterseekers, Inc. v. Brandforce SF, LLC, No. 12 Civ. 5392, 2013 WL 5236533, at *6 (E.D.N.Y. Sept. 16, 2013) (quoting Agency Rent A Car Servs., Inc. v. Grant Rent A Car Corp., 98 F.3d 25, 29 (2d Cir. 1996) ("'A connection that is merely coincidental is insufficient to support jurisdiction.'")). Had

---

[2]      RBC makes much of the fact that the DuPont Bond sales were settled through Depository Trust, a New York corporation, but, as Garcia Hamilton points out, all corporate and municipal bond transactions are cleared through Depository Trust.   ECF No. 33 ¶ 6.   Garcia Hamilton did not exercise any amount of discretion in having the transactions settle through New York; rather settlement constituted "administrative and logistical" work which courts have rejected as inadequate contacts, see Sandoval v. Abaco Club on Winding Bay, 507 F. Supp. 2d 312, 318 (S.D.N.Y. 2007), and settlement by Depository Trust had no greater significance than the signing of an agreement, which courts have found insufficient to confer jurisdiction.   Berkshire Capital Grp., 2007 WL 2757116, at *5 (citing Presidential Realty Corp. et al. v. Michael Square West, Ltd., et al., 44 N.Y.2d 672, 673-74 (1978)).

Smith not been travelling in mid-May of 2019, Detwiler would have contacted him, and not Wagoner, to offer to sell the DuPont Bonds. Had Smith given Detwiler another contact to transact business with in his absence from any other state, Detwiler would have had no cause to seek out Wagoner in New York. That Smith happened to direct Detwiler to a New York employee and that Detwiler obliged does not nearly amount to the type of purposeful availment of the New York marketplace that courts have found necessary to exercise personal jurisdiction over a defendant.

Garcia Hamilton has therefore not transacted business in New York within the meaning of N.Y. C.P.L.R. § 302(a)(1) and, because there is no other statutory basis for this Court's exercise of personal jurisdiction over Garcia Hamilton, RBC's complaint must be dismissed without prejudice to its refiling in an appropriate forum.[3]

---

[3]    As Judge Hanen noted in his decision dismissing Garcia Hamilton's declaratory judgment action for lack of personal jurisdiction over RBC, the parties are not left remediless even though both initial fora have dismissed the parties' competing actions, each for lack of personal jurisdiction over the respective defendants. Garcia Hamilton & Assocs., L.P., 466 F. Supp. 3d at 698 & n. 4. RBC can, if it chooses, refile suit against Garcia Hamilton in Texas, which would have general personal jurisdiction over Garcia Hamilton, as its principal place of business is in Texas. While RBC bemoans that having to relitigate in a forum that has already dismissed an action arising from the same fact pattern "would constitute a vast waste of resources," (ECF No. 28 at 12) in objecting to personal jurisdiction in Texas, that is an inconvenience of RBC's own making.

**CONCLUSION**

For the foregoing reasons, Garcia Hamilton's motion to dismiss for lack of personal jurisdiction is GRANTED. The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 24 and to close the case.


**SO ORDERED.**

Dated:      New York, New York
            January 22, 2021

                          _____
                          NAOMI REICE BUCHWALD
                          UNITED STATES DISTRICT JUDGE